UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CHURCH MUTUAL INSURANCE
COMPANY,

          Plaintiff,

v.                                           Case No. 5:06-CV-144

CONSUMERS ENERGY COMPANY,          HON. GORDON J. QUIST

          Defendant.

_____/

## OPINION

      Plaintiff, Church Mutual Insurance Company ("Church"), filed suit against Defendant, Consumers Energy Company ("Consumers"), alleging negligence. Through cross-motions for summary judgment, the parties have raised the following issues: (1) statute of limitations; (2) *res judicata*; (3) abstention; (4) primary jurisdiction; and (5) negligence. Additionally, Church has filed a motion to strike Consumers's expert witness, Frank Denbrock. For the following reasons, the Court will grant summary judgment in Church's favor on the issues of statute of limitations, *res judicata*, abstention, and primary jurisdiction. The Court will deny both parties' motions for summary judgment on the issue of negligence and deny, with conditions, Church's motion to strike the expert testimony of Denbrock.

## Facts and Procedural History

      The facts are largely undisputed. On January 2, 1999, a fire destroyed Jamestown Reformed Church in Jamestown, Michigan. Jamestown Reformed Church was insured by Church, a Wisconsin

corporation with its principal place of business in Wisconsin.  On this night, a severe storm caused eight inches of snow to fall and was accompanied by wind gusts as high as 49 mph.  During the storm, a power line operated by Consumers, a Michigan corporation, detached from a nearby utility pole, swung into the church, and started the fire.  The power line detached when a wooden pin, which secured the insulator and power line to the cross-arm of the power pole, broke in half.  Church paid Jamestown Reformed Church $2,416,817.77 under the terms of its insurance contract.

Church then filed suit against Consumers in Ottawa County Circuit Court on December 27, 1999.  Church alleged nuisance, trespass, and negligence.  Church's negligence claim asserted that Consumers failed to design, install, inspect, and maintain its equipment in a proper manner.  As one of its affirmative defenses, Consumers asserted that the negligence count should be dismissed pursuant to the primary jurisdiction doctrine.  Consumers argued that Michigan Public Service Commission ("MPSC") Rule B10.1 limited its liability and that the MPSC was better situated to determine Consumers's compliance with Rule B10.1.  Rule B10.1 provides that:

> The Company shall not be liable for interruptions in the service, phase failure or reversal, or variations in the service characteristics, or for any loss or damage of any kind or character occasioned thereby, due to causes or conditions beyond the Company's reasonable control, and such causes or conditions shall be deemed specifically to include, but not limited to, the following: acts or omissions of customers or third parties; operation of safety devices except when such operation is caused by the negligence of the Company; absence of an alternate supply of service; failure, malfunction, breakage, necessary repairs or inspection of machinery, facilities or equipment when the company has carried on a program of maintenance consistent with the general standards prevailing in the industry; act of God; war; action of the elements; storm or flood; fire; riot; labor dispute or disturbances; or the exercise of authority or regulation by governmental or military authorities.

Church responded that because its negligence claim did not arise from an interruption or failure in service, Rule B10.1 was inapplicable to its negligence claim.

2

The Ottawa County Circuit Court granted summary disposition in Consumers's favor on all counts. Regarding the negligence claim, the circuit court found that Rule B10.1 potentially limited Consumers' liability and that the MPSC was the proper authority for determining the rule's applicability. The Michigan Court of Appeals affirmed the trial court's decision to dismiss the negligence claim under the doctrine of primary jurisdiction. The court of appeals found that Church was complaining of inadequate equipment and maintenance and that "[m]aintenance and design problems resulting in damages are clearly anticipated under rule B10.1." *Church Mut. Ins. Co. v. Consumers Energy Co.*, No. 240571, 2003 WL 22461808, at *5 (Mich. Ct. App. Oct. 30, 2003). Further, the court said that "MPSC's specialized expertise makes it a preferable forum for resolving the issue." *Id.* Therefore, the court held that "[w]hether defendant is exempt from liability under rule B10.1 is a question properly reserved for the MPSC." *Id.* On May 28, 2004, the Michigan Supreme Court denied Church's application for leave to appeal, and on September 28, 2004, the Michigan Supreme Court denied Church's motion for reconsideration.

On December 7, 2004, Church filed with the MPSC a request for a declaratory ruling concerning the applicability of Rule B10.1 to the alleged facts. However, Church did not file a contested case proceeding concerning its negligence claim. On July 15, 2005, MPSC Administrative Law Judge Sharon Feldman issued a "Proposal For Decision." The ALJ recommended that the MPSC "interpret this tariff language to limit Consumers Energy's liability only for direct and consequential damages caused by interruptions in the service, phase failure or reversal, or variations in the service characteristics." (Proposal for Decision, Church's Br. in support of Mot. for Partial Summ. J. Ex. P at 22.) Since Church was not alleging a failure in service, but rather that Consumer's negligence caused the fire, the ALJ recommended that Rule B10.1 not apply to Church's claims. *Id.*

Relying on the ALJ's ruling, Church filed a motion to reinstate its negligence claim in Ottawa County Circuit Court. The Ottawa County Circuit Court, however, denied Church's motion under the law of the case doctrine. According to the circuit court, the Michigan Court of Appeals opinion required Church to submit its entire negligence claim to the MPSC. Instead, Church submitted only a request for a declaratory ruling concerning the applicability of Rule B10.1. Therefore, the circuit court determined that Church failed to follow the law of the case and denied Church's motion for reinstatement. The Michigan Court of Appeals denied Church's application for leave to appeal on April 14, 2006, as did the Michigan Supreme Court on April 14, 2006. Church filed the present negligence action in this federal court on October 4, 2006.

Meanwhile, Consumers appealed the ALJ's decision to the MPSC. On October 12, 2006, the MPSC concluded that Rule B10.1 "is not applicable to the factual scenario as presented, and, for that sole reason, does not limit Consumer's alleged liability in this matter." (MPSC Op. of Oct. 12, 2006, Case No. U-14331, Church's Mot. for Partial Summ. J. Ex. B at 9.) The MPSC determined that Rule B10.1 is designed only to limit liability for power surges or interruptions and any resulting direct or consequential losses. *Id.* Both parties have filed cross-motions on various issues. The Court will deal with each in turn.

<u>Analysis</u>

**Motions for Summary Judgment**

**I. Standard**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury

could return judgment for the non-moving party. *Id.* The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## II.  Statute of Limitations

First, Consumers argues that Church's present claim is barred by the statute of limitations. Both parties agree that the controlling statute of limitations period is three years. M.C.L. § 600.5805(10). The computation of time is governed by MCR 1.108. Under this formula, the day of the act or event which causes the time to run is not included. MCR 1.108(1). Additionally, "[i]f a period is measured by months or years, the last day of the period is the same day of the month as the day on which the period began." MCR 1.108(3). Thus, neither party disputes that the statute of limitations began to run on January 3, 1999, and would have expired – absent other events – on January 2, 2002.

Church filed suit against Consumers in state court on December 27, 1999. Under M.C.L. § 600.5856(a), the statute of limitations is tolled during the pendency of the state court action. Therefore, the statute of limitations did not resume until the Michigan Supreme Court denied Church's motion for reconsideration on September 28, 2004. Consumers argues, however, that tolling is inapplicable because the first suit was decided on the merits. Michigan law provides that this "statute permits the tolling of the statute of limitations during the pendency of a prior suit between the parties where the prior action was not adjudicated on the merits." *Sherrell v. Bugaski*, 169 Mich.App. 10, 17, 425 N.W.2d 707, 710 (1988). Consumers claims that the Ottawa County Circuit Court's decision to dismiss under the primary jurisdiction doctrine was a dismissal on the

merits.  In support of its claim, Consumers cites several decisions and rules stating that an order granting summary disposition is a dismissal on the merits.

Consumers' argument fails because it ignores the substance of the state court's ruling in favor of its form.  Although technically granting a motion for summary disposition, the Ottawa County Circuit Court based its order on the determination that MPSC had primary jurisdiction over the claim.  MCR 2.504(B)(3), which Consumers relies on, states that "[u]nless the court otherwise specifies in its order for dismissal, a dismissal under this subrule or a dismissal not provided for in this rule, *other than a dismissal for lack of jurisdiction* or for failure to join a party under MCR 2.205, operates as an adjudication on the merits." (emphasis added.)  As the rule states, a dismissal for lack of jurisdiction is not an adjudication on the merits.  Although the Ottawa County Circuit Court did not determine that it lacked jurisdiction, it did conclude that it shared jurisdiction with the MPSC and that the MPSC was better suited to hear the claim.  Moreover, Michigan courts have noted that "[t]he standing and primary jurisdiction concepts have this in common: both assume that the plaintiff may have a meritorious claim and yet, for largely institutional reasons, a judge who applies one of these concepts in a particular case refuses to decide the issues on their merits." *White Lake Improvement Ass'n v. City of Whitehall*, 22 Mich.App. 262, 284 n. 35, 177 N.W.2d 473, 483 n. 35 (1970).  Thus, the Ottawa County Circuit Court did not decide the case on the merits, and the statute of limitations was tolled until the Michigan Supreme Court denied Church's motion for reconsideration on September 28, 2004.

The parties also dispute the date upon which the statute of limitations began to toll.  Church claims that the statute of limitations began to toll when it filed its complaint on December 27, 1999. In contrast, Consumers argues that the statute of limitations did not toll until it was served with the complaint on January 3, 2000.  Consumers is correct that the tolling statute in effect at the time,

6

M.C.L. § 600.5856, did not toll the statute of limitations until the complaint was filed and served on the defendant.  However, M.C.L. § 600.5856 was amended in 2004 to toll the statute of limitations when the complaint is filed, so long as service is completed within the time set forth in the Supreme Court rules.  The rule states that it "applies to civil actions filed on or after April 22, 2004, and does not apply to a cause of action if the statute of limitations or repose for that cause of action has expired before April 22, 2004."  M.C.L. § 600.5856.  Since the complaint to which the tolling statute would apply was filed before April 22, 2004, the amendment would not apply to Church's prior lawsuit filed on December 27, 1999.  Therefore, the effect of the prior lawsuit on the tolling of the statute of limitations is governed by Michigan law as it was interpreted prior to the amendment.

The tolling statute in effect at the time Church filed its state court lawsuit did not toll the statute of limitations until "the time the complaint is filed and a copy of the summons and complaint are served on the defendant."  M.C.L. § 600.5856.  However, the Michigan Supreme Court interpreted this language in *Busciano v. Rhodes*, 385 Mich. 474, 484, 664 N.W.2d 202, 206 (1971), to mean that the statute of limitations was tolled upon filing the complaint.  In *Gladych v. New Family Homes*,  468 Mich. 594, 664 N.W.2d 705 (2003), the Michigan Supreme Court reversed its holding in *Busciano* and held that the plain language of M.C.L. § 600.5856 did not toll the statute of limitations until the complaint was filed and served upon the defendant.  However, the court limited the retroactive application of its holding "to cases in which this specific issue has been raised and preserved."  *Gladych*, 48 Mich. at 607, 664 N.W.2d at 712.  The Michigan Supreme Court further clarified *Gladych*'s applicability by holding that "[o]nly pending cases that preserved this particular statute of limitations challenge as of July 1, 2003 are covered by the limited retroactive application of our holding in *Gladych*."  *Collins v. Comerica Bank*, 668 N.W.2d 357, 357 (2003).  Because Consumers never raised or preserved this challenge in the previous state court action prior

7

to July 1, 2003, it cannot rely on a retroactive application of *Gladych*. Therefore, the governing law in effect at the time Church filed its action in Ottawa Circuit Court was the Michigan Supreme Court's holding in *Busciano*. Under *Busciano*, the statute of limitations began tolling upon the filing of the complaint on December 27, 1999.

Consumers argues that even assuming that the statute of limitations was tolled from December 27, 1999, to September 28, 2004, the current action is beyond the three year statute of limitations. As previously noted, the statute of limitations began to run on January 3, 1999. The statute began to toll on December 27, 1999. Thus, the statute of limitations still had two years and six days remaining. Therefore, when the statute of limitations began running again on September 28, 2004, Church had two years and six days within which to file suit. This meant that the statute of limitations ran until October 4, 2006. Because Church filed the present lawsuit on October 4, 2006, it satisfied the statute of limitations. Therefore, the Court will grant summary judgment in Church's favor on the issue of statute of limitations.

### III. *Res Judicata*

Consumers next argues that *res judicata* bars Church's present negligence action. In Michigan, *res judicata* has the following elements: "(1) the first action must have resulted in a decision on the merits; (2) the issues must have been resolved in the first action, either because they were actually litigated or because they might have been raised in the first action through reasonable diligence of the parties; and (3) both actions must be between the same parties or their privies." *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 747 (6th Cir. 2002). Consumers is unable to satisfy the first element because the Ottawa County Circuit Court decision dismissing the case under the primary jurisdiction doctrine was not a decision on the merits. *White Lake*, 22 Mich.App. at 284, n. 35, 177 N.W.2d at 483, n. 35. Although under federal law, the Sixth Circuit Court of Appeals has

8

similarly held that a dismissal under the primary jurisdiction doctrine, "while valid and final, does not bar another action by the plaintiff on the same claim." *In re Long Distance Telecomm. Litig.*, 831 F.2d 627, 634 (6th Cir. 1987).  Therefore, the Court will grant summary judgment in Church's favor on the issue of *res judicata*.[1]

## IV.  Abstention

Next, Consumers argues that this Court should refrain from hearing the case under the doctrine of abstention.  In making its argument, Consumers cites *Rooker-Feldman*, *Colorado River*, and *Younger* abstention.  The Court will address each abstention argument in turn.

Under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746 (1971), federal courts should abstain when a plaintiff invokes federal jurisdiction as a means of challenging on-going state-court judicial proceedings.  *Squire v. Coughlan*, 469 F.3d 551, 555 (6th Cir. 2006).  "There are three requirements for proper invocation of *Younger* abstention: (1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges."  *Id.* (internal quotations and citation omitted).  In the present case, there are no on-going state judicial proceedings.[2]  The Ottawa County Circuit Court granted summary disposition in Consumers' favor and denied Church's motion to reinstate the case, both of which Church appealed to the Michigan Supreme Court.  After the Michigan Supreme Court denied Church's leave to appeal, the state judicial proceedings were terminated.  Additionally, there are no pending proceedings before the MPSC.  Although the last

---

[1]Because neither party has raised or addressed whether issue preclusion applies, the Court will only address the claim preclusion effect of the prior state court decisions.

[2]Church filed an action in Ottawa Circuit Court on December 7, 2007.  Because that action was filed for protective purposes only and because Church has not even served its state court complaint, the Court considers the recently filed state court claim of little importance in determining whether abstention is appropriate.

opinion of the MPSC ruling stated that "[t]he commission reserves jurisdiction and may issue further orders as necessary," (MPSC Op. of Oct. 12, 2006, Church's Mot. For Partial Summ. J. Ex. B at 9), there are no matters pending before the MPSC requiring its jurisdiction or the need for future orders. Therefore, because there are no on-going state judicial proceedings, *Younger* abstention is inapplicable.

Next, Consumers relies on *Colorado River* abstention.  The abstention doctrine established by *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236 (1976), "is essentially a balancing test that federal courts use to decide when to abstain in civil cases out of deference to a parallel state proceeding." *Gottfried v. Medical Planning Serv., Inc.*, 142 F.3d 326, 329 (6th Cir. 1998).  In this case, because "there is no presently ongoing state proceeding parallel to the federal case, the exceptional circumstances necessary for *Colorado River* abstention do not exist." *Id.*  Therefore, the Court will not abstain under *Colorado River*.

Finally, Consumers argues that this Court should abstain under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine concerns "the limited circumstances in which [the Supreme] Court's appellate jurisdiction over state-court judgments precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority." *Exxon Mobil Co. v. Saudi Basic Indus. Co.*, 544 U.S. 280, 291, 125 S.Ct. 1517, 1526 (2005).  Because many lower courts were expanding the *Rooker-Feldman* doctrine beyond its original parameters, the Supreme Court in *Exxon Mobil* clarified the doctrine's limited applicability.  The Court held that *Rooker-Feldman* does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 293, 125 S.Ct. at 1527.  Rather, the doctrine only

applies when a party tries to attack the state court judgment or complains of injury caused by the state court judgment. The Sixth Circuit has offered the following analysis:

> The inquiry then is the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).

In the present case, Church did not file this action in federal court as a means of challenging the state court decision or to complain of injury caused by the state court decision. Rather, the source of the injury Church is complaining of is Consumers' alleged negligence. Even though Church is asserting the same claim in federal court as in state court, "the *Rooker-Feldman* doctrine is not a panacea to be applied whenever state court decisions and federal court decisions potentially or actually overlap." *Id.* at 395. Rather, *Rooker-Feldman* only applies "when a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law." *Id.* Otherwise, the effect of prior state court determinations are governed solely by preclusion. Therefore, the *Rooker-Feldman* doctrine does not mandate abstention.

Thus, the Court will grant summary judgment in Church's favor on the issue of abstention.

### V. Primary Jurisdiction

Consumers next argues that this Court should dismiss Church's claim under the primary jurisdiction doctrine. Primary jurisdiction "applies where a claim is originally cognizable in the courts and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Attorney Gen. v. Diamond Mortgage Co.*, 414 Mich. 603, 613, 327 N.W.2d

805, 809 (1982) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63-64, 77 S.Ct. 161, 165 (1956)).  Courts are to consider the doctrine "whenever there is concurrent original subject matter jurisdiction regarding a disputed issue in both a court and an administrative agency." *Durcon Co. v. Detroit Edison Co.*, 250 Mich.App. 553, 557, 655 N.W.2d 304, 307 (2002).  The Michigan Supreme Court has already recognized that the MPSC possesses potential concurrent jurisdiction over disputes involving electric companies. *See Travelers Ins. Co. v. Detroit Edison Co.*, 465 Mich. 185, 631 N.W.2d 733 (2001).

In assessing whether a matter should be deferred to an agency under the primary jurisdiction doctrine, "the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Rinaldo's Constr. Co. v. Michigan Bell Tel. Co.*, 454 Mich. 65, 71, 559 N.W.2d 647, 652-653 (1997).  In doing so, the Court should consider three factors: (1) the agency's specialized expertise in the matter; (2) the need for uniform resolution of the issues; and (3) the potential that judicial resolution of the issue will have an adverse impact on the agency's performance. *Id.*, 559 N.W.2d at 653.  In considering these three factors, the Michigan Supreme Court has provided useful guidelines for when a court should defer to an agency's concurrent jurisdiction.  Primarily, "[c]ustomer claims anticipated by the tariffs and regulations . . . are governed by those tariffs, and relief from presumptively valid limitations on liability therein must first be sought before the MPSC." *Id.* at 73-74, 559 N.W.2d at 654.  Additionally, "[t]he complexities of the regulatory scheme will generally not be implicated where the plaintiff's claim is for personal injury, property damage not covered by the tariffs, or other tortious activity, because the regulatory scheme is not designed to address these matters." *Id.* at 75, 559 N.W.2d at 654.

12

In making this determination, courts should also analyze the source of the plaintiff's tort claim. "If a plaintiff claims a breach of duty that arose solely out of the contractual relationship between the parties and not from any independent legal obligations supporting a cause of action in tort, primary jurisdiction rests with the MPSC." *Durcon*, 250 Mich.App. at 560, 655 N.W.2d at 309. This is because the "code or tariff is part of the contract between the parties," *Rinaldo's*, 454 Mich. at 73, 559 N.W.2d at 653, and any duties arising solely under the contract are anticipated by the tariffs, which the MPSC has primary jurisdiction over. However, where "a plaintiff's cause of action against a utility company arises in tort, thus potentially requiring a remedy outside the regulatory scheme, . . . such a cause of action may proceed in a court of general jurisdiction." *Id.* at 77-78, 559 N.W.2d at 655. Thus, the issue of primary jurisdiction "is not to be resolved by mere allegation, but rather by analysis of whether the facts pled give rise to a legal duty in tort independent of breach of contract." *Id.* at 82, 559 N.W.2d at 657.

All of the aforementioned factors tilt in Church's favor and persuade the Court that primary jurisdiction over the case does not rest with the MPSC. First, Church's negligence claim is based on a legal duty in tort independent of any possible breach of contract. At a minimum, Consumers had a duty "to exercise reasonable care in maintaining their wires." *Case v. Consumers Power Co.*, 463 Mich. 1, 7, 615 N.W.2d 17, 20 (2000). Consumers owes this duty regardless of whether Church is a party to any contract with Consumers. Thus, the "duty exists in law in the absence of a contract." *Michigan Basic Prop. Ins. Ass'n v. Detroit Edison Co.*, 240 Mich.App. 524, 537, 618 N.W.2d 32, 38 (2000). Moreover, Church's negligence claim is not one anticipated by the tariffs and regulations. The MPSC has already ruled that Rule B10.1 is not applicable to the present case. (MPSC Op. of Oct. 12, 2006, Church's Mot. for Partial Summ. J. Ex. B at 9.) Consumers has not cited any other tariff or regulation that would limit its liability or govern resolution of the relevant

issues.  Because Church's claim is for "property damage not covered by the tariffs, . . . the regulatory scheme is not designed to address those matters." *Rinaldo's*, 454 Mich. at 75, 559 N.W.2d at 654.

Further, this case does not implicate the three purposes of the primary jurisdiction doctrine. In assessing its jurisdiction over a very similar claim, the MPSC has noted that a "negligence claim arising from an accidental fire is generally a fact-intensive claim, which does not require the special expertise of an administrative agency." (MPSC Op., In the matter of Secura Insurance Company, Case No. U-14059, May 17, 2005, Church's Mot. for Partial Summ. J. Ex. Q at 21.)  In addition, "there is no allegation that the fire resulted from an incident which is likely to happen repeatedly or is anticipated by the tariff (such as a power surge), and hence there is no concern that uniform regulatory treatment is threatened." (*Id.*)  Therefore, the MPSC has already determined that claims similar to the present case are "unique to the facts of the case and properly belong[] before a court of general jurisdiction." (*Id.*)

Although both the Ottawa County Circuit Court and the Michigan Court of Appeals ruled that primary jurisdiction over the case rested with the MPSC, these ruling were made before the MPSC determined that Rule B10.1 did not apply.  After the MPSC determined that Rule B10.1 did not apply, there was no further need for MPSC's specialized expertise.  In light of the fact that Consumers' duty arose in tort independent of any contract, that the claim was for property damage not covered by tariffs, and that the MPSC had previously determined in a similar case that this type of claim does not require the special expertise of the MPSC nor threaten uniform regulatory treatment, the Court concludes that the MPSC does not have primary jurisdiction over Church's negligence claim.  Therefore, the Court will grant summary judgment in Church's favor on the issue of primary jurisdiction.

14

## VI. Negligence

Both parties have moved for summary judgment on Church's negligence claim. In Michigan, a plaintiff must prove four elements to establish a prima facie case of negligence: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case*, 463 Mich. at 6, 615 N.W.2d at 20. Since the parties do not dispute the existence of damages, the Court will address duty, breach, and causation in turn.

The existence of a legal duty is a question of law to be decided by the Court. *Valcaniant v. Detroit Edison Co.*, 470 Mich. 82, 86, 679 N.W.2d 689, 691 (2004). In determining whether a duty exists, courts consider the "foreseeability of the harm, degree of certainty of injury, closeness of connection between the conduct and injury, moral blame attached to the conduct, policy of preventing future harm, and the burdens and consequences of imposing a duty and the resulting liability for breach." *Id.* (quoting *Buczkowski v. McKay*, 441 Mich. 96, 101 n. 4, 490 N.W.2d 330, 333 n. 4 (1992)) (ellipses omitted). Michigan courts impose on electric companies a general duty of care. "The degree of care required is that used by prudent persons in the industry, under like conditions and proportionate to the dangers involved, to guard against reasonably foreseeable or anticipated consequences." *Schultz v. Consumers Power Co.*, 443 Mich. 445, 454, 506 N.W.2d 175, 179 (1993).

Generally, it is up to the jury to determine whether the defendant's conduct fell below the standard of care. *Case*, 463 Mich. at 7, 615 N.W.2d at 20. However, under certain circumstances, Michigan courts do impose a specific standard of care. *Id.* One example occurred in *Schultz* where the Michigan Supreme Court held that "pursuant to its duty, a power company has an obligation to reasonably inspect and repair wires and other instrumentalities in order to discover and remedy hazards and defects." *Schultz*, 443 Mich. at 451, 506 N.W.2d at 178. This duty "does not arise

15

where it is not foreseeable to [the defendant] that the plaintiff would come into harmful contact with the wires." *Groncki v. Detroit Edison Co.*, 453 Mich. 644, 657, 557 N.W.2d 289, 295 (1996). Moreover, the foreseeability determination "is not whether the company should have anticipated the particular act from which the injury resulted, but whether it should have foreseen the probability that injury might result from any reasonable activity done on the premises for business, work, or pleasure." *Schultz*, 443 Mich. at 452, 506 N.W.2d at 179.

In the present case, Consumers owed Church, or its insured, the duty to inspect and maintain its wires in a reasonable manner. Notably, the electric line was close enough to the church that upon detaching from the pole, it swung into and hit the church. Therefore, "it was foreseeable that a failure to inspect or repair the wire could result in injury or fire by the wire falling on the building below." *Bradley v. Hamilton Mutual Ins.*, No. 222035, 2002 WL 345962, *3 (Mich. Ct. App. Mar. 5, 2002). Consumers argues that the eight inches of snowfall and 49 mph wind gusts were unforeseeable. While that may be relevant in determining whether Consumers breached it duty (i.e. whether Consumers' inspection and maintenance was reasonable given expected weather patterns) or whether that breach caused Church's damages, it does not extinguish Consumers' duty. Consumers need not anticipate the specific act causing the damage, but rather just the possibility that injury could result. In the present case, it was foreseeable that a failure to inspect and maintain the lines in a reasonable manner could cause injury to the nearby church. Therefore, Consumers had a duty to inspect and maintain the electric lines in a reasonable manner.

Next, both parties argue that the Court should grant summary judgment on the issue of breach. Generally, "[t]he jury must decide whether defendant breached the legal duty owed to the plaintiff. . . ."*Riddle v. McLouth Steel Products Corp.*, 440 Mich. 85, 96, 485 N.W.2d 676, 682

(1992).   Therefore, the Court must determine whether a genuine issue of material fact exists that Consumers failed to exercise reasonable care in inspecting and maintaining the power line next to the church.

Church has presented evidence that Consumers' inspection and maintenance of the power line was unreasonable.  Church alleges that a proper inspection would have revealed the deteriorating nature of the pole cross-arm and the wooden pin securing the power line to the cross-arm, and that proper repair of the materials would have prevented the power line from breaking loose from the power pole.  First, one of Consumers' employees stated that Consumers stopped using wood pins in 1976 because there was a "controversy" over problems with wood pins breaking.  (Venlet Dep. at 52, Church's Br. in support of Mot. for Summ. J. regarding negligence Ex. 4.)  In 1996, Consumer implemented an Overhead Lines Inspection Program.  (Norton Dep. at 25, Church's Br. in support of Mot. for Summ. J. regarding negligence Ex. 2.)  The only inspection of the power line and power pole at issue was conducted by Consumers employee James Norton in 1996.  (*Id.* at 72.)  Norton's inspection lasted a "couple of minutes" and was conducted from the ground inside his stopped car. (*Id.*)  According to Norton, nothing stood out as a problem.  (*Id.*)  Norton admitted that a person cannot tell from the ground if a cross-arm or wooden pin is weathered to the point of needing replacement.  (*Id.* at 11.)  After viewing pictures of the cross-arm, Norton stated that had he seen the condition of the cross-arm, he would have had a "lineman" look at it to determine if replacement was warranted.  (*Id.* at 78-79.)   Additionally, linemen James Bilotti and Brant Venlet, Jr., both Consumers employees, stated that had they seen the condition of the cross-arm and wooden pin prior to the fire, they would have recommended that it be replaced.  (Venlet Dep. at 57; Bilotti Dep. at 93, Church's Br. in support of Mot. for Summ. J. regarding negligence Exs. 3, 4.)  Moreover, Church has presented evidence that the configuration of the power lines at issue put additional pressure on

17

the cross-arm and the power pole. (Bilotti Dep. at 42-43, Church's Br. in support of Mot. for Summ. J. regarding negligence Ex. 3.) Bilotti further stated that when dealing with such configurations, a cornering pin is more secure than a wooden pin. (*Id.*)

In response to Church's evidence, Consumers has provided evidence that there was no repetitive pattern of wooden pins breaking either on or before the fire. (Norton Aff., Consumers' Br. in support of Mot. for Summ. J. on negligence Ex. E.) Further, Consumers notes that its inspection program conformed with the general standards prevailing in the industry and was consistent with the National Electric Safety Code. In fact, at oral argument, consumers argued strenuously that no qualified witness has set forth any acknowledged standard of care that consumers violated.

Based on the evidence presented by both parties, there is a genuine issue of material fact whether Consumers breached its duty to inspect and maintain its power lines in a reasonable manner. Church presented evidence that Consumers stopped using the wooden pins at issue over thirty years ago because of problems with the pins breaking, that the configuration of the power lines next to the church placed additional pressure on the power pole that would today be minimized by a steel pin or cornering pin, and that the wooden pin and cross-arm had deteriorated to the point of requiring replacement. In light of this, a jury could conclude that reasonable care required a more thorough inspection of potentially life-threatening electrical configurations. Although Consumers did have Norton inspect the power lines in 1996, Norton's inspection of a "couple minutes" duration was conducted from inside his parked car. Norton himself stated that he would have been unable to determine if the cross-arm and wooden pin were weathered to the point of requiring replacement. Moreover, Norton stated that had he seen the condition of the cross-arm, he would have called on a lineman to inspect it. Further, both Consumers linemen testified that had they seen the condition of the cross-arm, they would have recommended replacement.

Therefore, this case stands in stark contrast to those where there is "no testimony regarding any maintenance actually performed on the lines, or testimony indicating an absence of maintenance by the defendant." *Citizens Ins. Co. v. Cameron*, No. 215510, 2001 WL 672174, at *2 (Mich. Ct. App. May 15, 2001). Rather, Church has presented evidence that "obvious potential defects were present in the power lines at issue." *Badger Mutual Ins. Co. v. Consumers Energy Co.*, No. 243769, 2004 WL 576255, at *2 (Mich. Ct. App. Mar. 23, 2004). Moreover, Consumers cannot avoid liability solely because it complied with NESC or industry-wide standards. *Schultz*, 443 Mich. at 456, 506 N.W.2d at 180. "While it may be evidence of due care, conformity with industry standards is not conclusive on the question of negligence where a reasonable person engaged in the industry would have taken additional precautions under the circumstances." *Id.* A jury could conclude that a reasonable person – given the past problems with wooden pins, the configuration of the power line, and the power line's location next to an oft-used building – would have taken more precautions than Consumers took in the present case. However, a jury could also conclude that Consumers' inspection and maintenance of the power line was reasonable. Therefore, there is a genuine issue of material fact whether Consumers breached its duty.

Consumers also argue that Church did not satisfy the causation element of its negligence claim. To satisfy causation, a plaintiff in a negligence action must show cause in fact and proximate cause. *Skinner v. Square D Co.*, 445 Mich. 153, 162-163, 516 N.W.2d 475, 479 (1994). Cause in fact "generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Id.* at 163, 516 N.W.2d at 479. In the present case, Church has presented sufficient evidence to create a genuine issue of material fact that had Consumers taken additional inspection and maintenance precautions, the power line would not have detached from the power pole. Church presented evidence that the cross-arm of the power pole and the wooden pin were

deteriorated to the point of needing replacement and that, but for Consumers' negligence in failing to repair the pole, the power line would not have detached and started the fire that burned the church.

In contrast to "but for" causation, proximate cause "normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Id.*, 516 N.W.2d at 479. Proximate cause depends on "whether it is foreseeable that the actor's conduct may create a risk of harm to the victim, and whether the result of that conduct and intervening causes were foreseeable." *Moning v. Alfono*, 400 Mich. 425, 439, 254 N.W.2d 759, 765 (1977). As noted earlier, it was foreseeable that a failure to inspect and maintain the power line in a reasonable manner could cause injury to the church or its members. It was even foreseeable that a breach of this duty could cause the specific harm in question – a fire. *Bradley*, 2002 WL 345962, at *3. In response, Consumers argues that it was the severe weather that caused the power line to detach and that the severity of the weather was unforeseeable. While the weather may have contributed to the power line's detachment, "[f]oreseeable intervening forces are within the scope of the original risk, and hence of the defendant's negligence." *Moning*, 400 Mich. at 441, 254 N.W.2d at 766. Thus, if the weather was foreseeable, it will not relieve Consumers of liability even though it may have contributed to the harm. *Id.* In the present case, the weather was foreseeable. First, eight inches of snowfall in West Michigan is not so unusual as to constitute an unforeseeable superseding event absolving Consumers of liability. The undersigned has experienced several such storms and, even worse, ice storms. Additionally, wind gusts up to 49 mph were not only foreseeable, but were within the design criteria for the power line. (Simpson Dep. at 52, Church's Br. in support of Mot. for Summ. J. regarding negligence Ex. 4.) Whatever the causal effect of the weather conditions, they were foreseeable and within the scope of the original risk. Therefore,

20

Church has presented sufficient evidence to survive summary judgment on the issue of proximate causation.

Finally, neither party disputes that Church satisfies the damages element of its negligence claim.  Thus, Consumers owed Church a duty to exercise reasonable care in maintaining and inspecting its power lines, and there is a genuine issue of material fact whether Consumers breached that duty and whether the breach caused the damages at issue.  For that reason, the Court will deny both parties' motions for summary judgment on the issue of negligence.

### Motion to Strike

Church has also filed a motion to strike the expert testimony of Frank Denbrock.  In the Supplemental Joint Status Report (docket no. 12), the parties agreed "to use the same experts as disclosed in the State of Michigan case and that no additional experts be used, absent good cause as demonstrated on motion or as may be agreed upon by further stipulation of the parties."  Moreover, the report stated that "Defendant will provide any supplemental expert report, if applicable, by June 25, 2007."  In light of this, the Court's Case Management Order did not provide a date for disclosure of additional expert witnesses and provided a June 25, 2007, date for disclosure of any supplemental expert reports.  (Docket no. 14.)  However, in its witness list, Consumers lists possible expert testimony from Frank Denbrock.  (Docket no. 20.)  Consumers did not provide Church with an expert report by June 25, 2007.  Church argues that because this witness was not disclosed in the state case and because Consumers never provided an expert report, the use of this testimony would be in violation of the parties' stipulation and the Court's Case Management Order.  Consumers has not responded to Church's motion to strike.

Fed. R. Civ. P. 37(c) states that a "party that without substantial justification fails to disclose information required . . . is not, unless such failure is harmless, permitted to use as evidence at a trial

. . . information not so disclosed."  Use of this expert witness would violate the parties stipulation – since he was not used in the state case – as well as the Court's Case Management Order since no expert report was provided.  However, no prejudice will be suffered by Church if Mr. Denbrock's report is delivered to Church and Mr. Denbrock can be deposed by Church a couple of weeks before trial.  Therefore, the Court will deny Church's motion to strike the expert testimony of Frank Denbrock, subject to delivering Mr. Denbrock's report to Church forthwith (if it has not already done so) and making Mr. Denbrock available to be deposed by Church in February 2008.

### Conclusion

The Court will grant summary judgment in Church's favor on the issues of statute of limitations, *res judicata*, abstention, and primary jurisdiction.  The Court will deny Church's and Consumers' motion for summary judgment on the issue of negligence.  Additionally, the Court will deny Church's motion to strike.

An Order consistent with this Opinion will be entered.


Dated:  January 2, 2008                             _____/s/ Gordon J. Quist_____
                                                    GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE